1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   PEGGY S. RUFFRA
    Supervising Deputy Attorney General
5   STAN HELFMAN, State Bar No. 49104
    Supervising Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7   Telephone: (415) 703-5854
    Fax: (415) 703-1234
8   Email: Stan.Helfman@doj.ca.gov

9   Attorneys for Respondent

10          IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

| | |
|---|---|
| **HENRY LEE TOWNSEND,** | C 07-4904 PJH (PR) |
| Petitioner, | |
| v. | |
| **DERRAL ADAMS, Warden,** | |
| Respondent. | |

20    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

1

# TABLE OF CONTENTS

2
Page

3  STATEMENT OF THE CASE                                              1

4  STATEMENT OF FACTS                                                 2

5  STANDARD OF REVIEW                                                 3

6  ARGUMENT                                                           4

7    I.    THE     STATE     COURTS     REASONABLY     REJECTED
           PETITIONER'S CLAIM THAT CALJIC NO. 2.15 VIOLATED
8          DUE PROCESS                                                4

9    II.   THE      STATE     COURT     REASONABLY     REJECTED
           PETITIONER'S CLAIM HE WAS IMPROPERLY IMPEACHED
10         WITH PRIOR CONVICTIONS                                     9

11 CONCLUSION                                                        13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2                                                                                      **Page**

3   **Cases**

4   *Barnes v. United States*
    415 U.S. 837 (1973)                                                                 5
5
    *Brecht v. Abrahamson*
6   507 U.S. 619 (1993)                                                                8, 12

7   *Early v. Packer*
    537 U.S. 3 (2002)                                                                   5
8
    *Estelle v. McGuire*
9   502 U.S. 62 (1991)                                                                 7, 10

10  *Fry v. Pliler*
    127 S.Ct. 2321 (2007)                                                               8
11
    *Jammal v. Van De Kamp*
12  974 F.2d 1099 (9th Cir. 1992)                                                      10

13  *LaJoie v. Thompson*
    217 F.3d 663 (9th Cir. 2000)                                                        3
14
    *People v. Barker*
15  91 Cal.App.4th 1166 (2001)                                                        5, 7

16  *People v. Castro*
    186 Cal.App.3d 1211 (1986)                                                        11
17
    *People v. Dillingham*
18  186 Cal.App.3d 688 (1986)                                                         11

19  *People v. Green*
    34 Cal.App.4th 165 (1995)                                                         11
20
    *People v. Lepolo*
21  55 Cal.App.4th 85 (1997)                                                          12

22  *People v. Mendoza*
    78 Cal.App.4th 918 (2000)                                                         11
23
    *People v. Muldrow*
24  202 Cal.App.3d 636 (1988)                                                         11

25  *People v. Narvaez*
    104 Cal.App.4th 1295 (2002)                                                        7
26
    *People v. Prieto*
27  30 Cal.4th 226 (2003)                                                              7

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*People v. Riel*
22 Cal.4th 1153 (2002)                                                7

*Williams v. Taylor*
120 S.Ct. 1495 (2000)                                              3, 5

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                    5

**Statutes**

California Penal Code
     § 484g, subd. (a)                                            1
     § 488                                                         1
     § 496, subd. (a)                                              1

United States Code, Title 28
     § 2254(a)                                                     3
     § 2254(d)                                                     3

**Other Authorities**

California Jury Instructions, Criminal
     No. 1.01                                                      8
     No. 2.00                                                      8
     No. 2.02                                                      8
     No. 2.15                                            1, 4, 5, 7, 8
     No. 2.23                                                     12
     No. 2.90                                                      8
     No. 9.40                                                      8
     No. 14.65                                                     8

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | STAN HELFMAN, State Bar No. 49104
Supervising Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5854
Fax: (415) 703-1234
8 | Email: Stan.Helfman@doj.ca.gov

9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

| HENRY LEE TOWNSEND, | C 07-4904 PJH (PR) |
| | |
| Petitioner, | |
| | **MEMORANDUM OF POINTS** |
| v. | **AND AUTHORITIES IN** |
| | **SUPPORT OF ANSWER** |
| DERRAL ADAMS, Warden, | |
| | |
| Respondent. | |

## STATEMENT OF THE CASE

Townsend was convicted, following a jury trial, of receiving stolen property (Cal. Pen. Code, § 496, subd. (a)) and misdemeanor use of a stolen access card (Pen. Code, §§ 484g, subd. (a), 488.) The court found two prior strike convictions true. The court sentenced Townsend to a term of 25 years to life. On appeal, Townsend claimed the trial court erred in giving CALJIC No. 2.15, allowing impeachment with prior convictions, and failing to stay sentence on the misdemeanor. On March 28, 2007, the Court of Appeal found no error and affirmed. Exh. A, p. 2.

On April 30, 2007, Townsend sought review in the California Supreme Court. The petition was denied on June 13, 2007. Exhs. B, C.

1        Petitioner filed the federal habeas corpus petition on September 21, 2007. The order to

2   show cause was issued September 28, 2007.

3   <center>**STATEMENT OF FACTS**</center>

4        The statement of facts is from the opinion of the Court of Appeal in H030025, Exh. A, pp.

5   2-4.

6        On September 12, 2004, at approximately 9:30 p.m., a man snatched Trinh Tuyet
    Trinh's purse as she parked her car in front of her home. The purse contained a wallet,

7   checkbook, credit card and cell phone. Trinh followed the man onto the street and saw
    him get into a white truck driven by another person. She flagged down a car and told the

8   occupants, Gabriel Medina and Randall Kennedy, that someone had stolen her purse. She
    pointed to a white Explorer that was driving away, and Medina and Kennedy followed.

9        The Explorer, exceeding the speed limit, drove through two red lights on surface
    streets before entering the freeway. Medina and Kennedy lost the Explorer after it crossed

10  several lanes to make a sudden exit. They returned to where they had left Trinh and gave
    the Explorer's license plate number to the police. A tow hitch on the Explorer obscured

11  the view of the license plate, causing Kennedy and Medina to misidentify one character,
    but the police eventually focused on an Explorer registered to defendant. They located the

12  vehicle in San Jose in the very early hours of the morning. The hood of the Explorer was
    warm, indicating it had been driven recently. Looking into the vehicle, Officer Edward

13  Perea observed a credit car with Trinh's name and a couple of cell phones in the center
    console.

14       The officers knocked on defendant's door and arrested defendant, telling him it was
    in connection with an earlier incident involving his vehicle. When defendant first saw the

15  officers, he burst into tears. He said he did not know that the guy was going to do what
    he did and offered to show the officer where that person lived. Defendant identified the

16  place where he said he had dropped off his passenger. Officer Perea knocked on doors in
    the neighborhood and eventually located Tavita Wooden, who matched a description Trinh

17  had given him of the man who had taken her purse. Officer Perea was unable to arrest
    Wooden at that point.

18       After being read his rights, defendant agreed to talk and told Officer Perea that
    Anthony Johnson, a friend, had asked him for a ride to the Motel 6. When shown a

19  photograph of Wooden, defendant identified him as Anthony Johnson. After they were
    on their way, defendant said Wooden told him to stop in another location and Wooden got

20  out of the vehicle. When Wooden came back to the Explorer, he told defendant to hurry
    away and defendant complied. Defendant said he did not know he was being followed but

21  that he was scared. He told Officer Perea that Wooden was clutching a black purse when
    he returned to the car and started going through it as they drove away. Wooden pulled out

22  various items, including a cell phone and credit card. Defendant admitted that the cell
    phone and credit card Officer Perea had seen in the Explorer came from the purse. He also

23  admitted that he had used the credit card to purchase gasoline at a Unocal 76 station.

24       Defendant testified on his own behalf at trial and further explained that Wooden was
    an acquaintance who had asked defendant for a ride home. On the way to Wooden's

25  house, Wooden asked defendant to stop in the general area of the Motel 6, where Wooden
    needed to make a "quick run." Wooden left the car and defendant waited for about 20 to

26  25 minutes for Wooden to return. Defendant did not know Wooden was going to commit
    a robbery.

27       Wooden returned to the vehicle and told defendant to "go, go, go." Wooden seemed
    jittery and anxious and was clutching an object that defendant later saw was a purse. He

28  asked Wooden what had happened, but Wooden just told him to go and get out of there.
    Defendant was scared and thought Wooden had done "something wrong." Defendant had

been to prison before and wanted to get away quickly for fear of being incarcerated again. He started the truck and left. When defendant saw Wooden rifling through the purse, he believed that Wooden had done "something" and gotten defendant involved in it. At one point, defendant asked Wooden, "what did you do, you just robbed somebody[,]" and Wooden confirmed his suspicion.

Wooden left some of the items that he had taken in defendant's car. Defendant purchased gasoline with Trinh's credit card about two or three hours after dropping off Wooden. As defendant was pumping the gas, he stopped because he realized he was doing something wrong. He later said that he took the card from the center console to buy gas, mistaking it for his, and stopped pumping gas when he realized it was not his card.[2] At home, defendant told his wife what had happened and they discussed what he should do next. About a half hour later, the police knocked at the door. He did not call the police because he was afraid that as a convicted felon he would be implicated in the crime, but he tried to be helpful by leading them to Wooden.

---

[2] He also testified, however, that he picked up the credit card and cell phone from the floor and put them in the center console when he got home, but that he did not go home before going to get gas.

## STANDARD OF REVIEW

A federal court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). In deciding whether the state court's decision in contrary to or an unreasonable application of clearly established federal law, the federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

///

///

///

**ARGUMENT**

**I.**

**THE STATE COURTS REASONABLY REJECTED PETITIONER'S
CLAIM THAT CALJIC NO. 2.15 VIOLATED DUE PROCESS**

Petitioner claimed in the California Court of Appeal and Supreme Court, as he claims here, that the trial court's use of CALJIC No. 2.15 violated his due process rights because it reduced the prosecution's burden of proof. The Court of Appeal rejected petitioner's attack on CALJIC No. 2.15:

> Defendant argues that the court's use of CALJIC No. 2.15 violated his due process rights.[3] Specifically, he contends the jury instruction shifted the burden of proof to defendant and "reduced the burden of proof" by permitting "conviction upon conscious possession coupled with slight evidence of guilt[.]" Defendant acknowledges, however, that the California Supreme Court has repeatedly upheld CALJIC No. 2.15 against due process claims. (See, e.g., *People v. Yeoman* (2003) 31 Cal.4th 93, 131 (*Yeoman*); *People v. Prieto* (2003) 30 Cal.4th 226, 248 (*Prieto*); *People v. Holt* (1997) 15 Cal.4th 619, 677 (*Holt*).)
>
> In *Yeoman, supra*, 31 Cal.4th 93, 131, the California Supreme Court rejected the argument that CALJIC No. 2.15 violates due process by creating mandatory inferences or conclusive presumptions that shift the burden of proof to the defense. The court explained that the instructions permit, but do not require, the jury to draw the inferences described, and that "[a] permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Ibid.*, internal citations omitted.) In this case, reason and common sense justify the conclusion that defendant's possession of Trinh's recently stolen property tended to show that he was guilty of receiving stolen property. (See *id.* at pp. 131-132.) There is strong corroborating evidence that defendant withheld the property knowing it was stolen. Defendant testified that he saw Wooden return with the purse and take items out of it, including the cell phone and card. When defendant asked Wooden if he had robbed someone, Wooden said yes. Defendant found the card and cell phone in the car after dropping off Wooden and moved the items to the center console of car. Finally, defendant used the credit car knowing (or, at least, belatedly realizing) that it was not his.
>
> The high court also has found that there is "no possibility that giving the jury the additional admonition that it could not rely solely on evidence that defendant possessed recently stolen property would be understood by the jury as suggesting that it need not find all of the statutory elements of [the crimes charged] had been proven beyond a reasonable

---

[3] As given in this case, CALJIC No. 2.15 states, in part: "If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crimes charged in counts 1 and 2. [¶] Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. [¶] However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference guilt. [¶] Please, remember that to convict the defendant of the crimes charged, you must be satisfied beyond a reasonable doubt.

doubt." (*Holt, supra*, 15 Cal.4th at p. 677; see also *Prieto, supra*, 30 Cal.4th at p. 248 [rejecting argument that instruction's reference to "slight" corroborating evidence lowers the prosecution's burden of proof].)  In this case, moreover, the court expressly reiterated the reasonable doubt standard within the CALJIC No. 2.15 instruction.

We are bound by the California Supreme Court's determinations regarding the constitutional validity of CALJIC No. 2.15 (see *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455), and find no basis for defendant's due process claim.

Exh. A, pp. 4-6.

A state court decision is not "contrary to" clearly established federal law unless the decision applies a rule that contradicts controlling Supreme Court authority, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. See *Early v. Packer*, 537 U.S. 3, 8 (2002); *Williams*, 529 U.S. at p. 406.  State court decisions that are not "contrary to 'Supreme Court authority may not be set aside on federal habeas unless' they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or are based on an unreasonable determination of the facts." *Early*, 537 U.S. at 11.  An "unreasonable application" is not merely erroneous or incorrect; it is "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Petitioner has not demonstrated that the Court of Appeal's decision is contrary, to or an unreasonable application of, clearly established federal law.

Petitioner claimed in the state courts that CALJIC No. 2.15 violates due process because the "slight" corroboration language impermissibly reduces the government's burden of proof.  This claim was properly rejected.

In claiming that the "slight" corroboration language harms defendants because it *reduces* the people's burden of proof, petitioner errs.  The instruction actually benefits the defendant because it *increases* the People's burden by requiring corroboration.

In *People v. Barker*, 91 Cal.App.4th 1166 (2001), the court found the trial court properly gave CALJIC No. 2.15 with respect to robbery, but should not have extended it to murder.  Relying partly on *Barnes v. United States*, 415 U.S. 837 (1973), the *Barker* court explained why CALJIC No. 2.15 does not violate due process:

1    Barker acknowledges CALJIC No. 2.15 has withstood numerous challenges (see *Barnes
     v. United States* (1973) 415 U.S. 837, 843-846 [93 S.Ct. 2357, 2362-2363, 37 L.Ed.2d

2    380] (*Barnes*); *People v. Holt* (1997) 15 Cal.4th 619, 676-677 (*Holt*); *People v. Mendoza*
     (2000) 24 Cal.4th 130, 176-177 (*Mendoza*)), and is based upon a longstanding rule of law

3    which allows a jury to infer guilt of a theft-related crime from the fact a defendant is in
     possession of recently stolen property when coupled with slight corroboration by other

4    inculpatory circumstances which tend to show guilt (see *People v. McFarland* (1962) 58
     Cal.2d 748, 754-758 (*McFarland*); *People v. Anderson* (1989) 210 Cal.App.3d 414, 420-

5    432 (*Anderson*). . . .

6    In *Barnes*, the United States Supreme Court noted that for centuries courts have instructed
     juries that an inference of guilty knowledge may be drawn from the fact of unexplained

7    possession of stolen goods. (*Barnes, supra,* 412 U.S. at p. 843 [93 S.Ct. at p. 2362].) The
     court in *Barnes* found that such inference comported with due process if "the evidence

8    necessary to invoke the inference is sufficient for a rational juror to find the inferred fact
     beyond a reasonable doubt. . . ." (*Ibid.*)

9

10   In California CALJIC No. 2.15 has evolved from cases holding that proof of possession
     of recently stolen property is insufficient by itself to support a guilty verdict as to a theft-

11   related offense. (See *McFarland, supra,* 58 Cal.2d at pp. 754-758, 473; *People v. Clark*
     (1953) 122 Cal.App.2d 342, 345.) It is a permissive, cautionary instruction which inures

12   to a criminal defendant's benefit by warning the jury not to infer guilt merely from a
     defendant's conscious possession of recently stolen goods, without at least some

13   corroborating evidence tending to show the defendant's guilt. (See *People v. Johnson*
     (1993) 6 Cal.4th 1, 35-37 (*Johnson*); *People v. Gamble* (1994) 22 Cal.App.4th 446, 452-

14   455 (*Gamble*).) Such an inference of guilt has been held not to relieve the prosecution of
     its burden of establishing guilt beyond a reasonable doubt. (*McFarland, supra,* 58 Cal.2d

15   at pp. 756-757, *Gamble, supra,* 22 Cal.App.4th at pp. 453-454, *Anderson, supra,* 210
     Cal.App.3d at pp. 430-432.) The prosecutor's use of this permissive inference comports

16   with due process unless there is no rational way for the jury to make the logical connection
     which the presumption permits. (*Ulster County Court v. Allen* (1979) 442 U.S. 140, 157

17   [99 S.Ct. 2213, 2224-2225, 60 L.Ed.2d 777]; see also *Gamble, supra,* 22 Cal.App.4th at
     pp. 454-455.)

18   As the court in *Gamble* found, "the language of CALJIC No. 2.15 contemplates its use for
     far more than knowingly receiving stolen property charges, for in the body of the

19   instruction is a blank for insertion of the named charge" to which it applies. (*Gamble,
     supra,* 22 Cal.App.4th at p. 453.) Such deduction is supported by the Use Note to CALJIC

20   No. 2.15 (6th ed. 1996) page 57, which provides that such instruction "will serve to cover
     the effect of possession of recently stolen property in [the offenses of] robbery, burglary,

21   theft and receiving stolen property," and by the court's observation in *McFarland* that the
     inference "is applicable whether the crime charged is theft, burglary, or knowingly

22   receiving stolen property. [Citation.]" (*McFarland, supra,* 58 Cal.2d at p. 755.)

23   Further, "it is not just the inference as to defendant's knowledge that the property was
     stolen that may be drawn, but in the context of theft crimes other than receiving stolen

24   property, CALJIC No. 2.15 by its very language permits the jury in a proper case to infer
     the identity of defendant as the one who committed the crime." (*Gamble, supra,* 22

25   Cal.App.4th at p. 453.) CALJIC No. 2.15 has also been held appropriate in cases where
     the inference to be drawn in theft-related crimes concerned the defendant's intent to steal

26   (*Holt, supra,* 15 Cal.4th at pp. 676-677, *Johnson, supra,* 6 Cal.4th at pp. 35-38), or
     whether the property in the defendant's possession had even been stolen from the victims

27   (*Holt, supra,* at pp. 676-677; *Johnson, supra,* at pp. 35-38.)

28   More recently our Supreme Court has upheld the giving of CALJIC No. 2.15 in several

murder cases, but only with regard to the crime of burglary in *Johnson, supra,* 6 Cal.4th at pages 36-38, of robbery and burglary in *Smithey, supra,* 20 Cal.4th at pages 975-979, and with regard to robbery, burglary and kidnaping to commit robbery in *Mendoza, supra,* 24 Cal.4th at pp. 176-177. . . .

---

[n6] From the history and development of CALJIC No. 2.15, we glean that the instruction has been used in theft-related cases because there is a substantial connection between the established fact of conscious possession of recently stolen property and the inferred fact, i.e., knowledge that the property in the defendant's possession was stolen (*McFarland, supra,* 58 Cal.2d at pp. 754-758). With the inference from the knowledge and conscious possession of such property, and slight additional evidence as corroboration, the intent to steal, identity, and the determination a defendant committed the acts necessary to constitute robbery and burglary have been found to naturally and logically flow and thus support the giving of CALJIC No. 2.15. (See *Smithey, supra,* 20 Cal.4th at pp. 975-979; *Holt, supra,* 15 Cal.4th at pp. 676-677.)

(*People v. Barker, supra,* 91 Cal.App.4th at pp. 1173-1175, and fn. 6; see also *People v. Narvaez,* 104 Cal.App.4th 1295, 1304 (2002).)

In *People v. Prieto,* 30 Cal.4th 226 (2003) the California Supreme court specifically rejected the claim CALJIC No. 2.15 lowers the prosecution's burden of proof.

CALJIC No. 2.15 did not directly or indirectly address the burden of proof, and nothing in the instruction absolved the prosecution of its burden of establishing guilt beyond a reasonable doubt. Moreover, other instructions properly instructed the jury on its duty to weigh the evidence, what evidence it may consider, how to weigh that evidence, and the burden of proof. In light of these instructions, there is "no possibility" CALJIC No. 2.15 reduced the prosecution's burden of proof in this case.

(30 Cal.4th at p. 248 (See also *People v. Riel,* 22 Cal.4th 1153, 1200 (2002) [standard instructions on circumstantial evidence do not reduce the prosecution's burden of proof].)

On federal habeas review, the question is whether there was a reasonable likelihood that the jury misinterpreted the law in a way potentially unfavorable to the defense. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991).

As noted in the quoted excerpt from *Barker,* CALJIC No. 2.15 has generally been held to be favorable to the defendant because it tells the jury conscious possession of recently stolen property alone is insufficient for an inference of guilt. The second paragraph of the instruction tells the jury it "may consider" the types of additional corroborating evidence specified, but it does not require the jury to do so. The trial court instructed the jury on the required elements of robbery and receiving stolen property and instructed further that each of the elements must be proved beyond a

1   reasonable doubt. (4 RT 229-231; 1 CT 115, 122-123, 126; CALJIC Nos. 2.90, 9.40, 14.65.) The

2   jury was instructed to evaluate the totality of the evidence, including circumstantial evidence from

3   which inferences may reasonably be drawn, and how to weigh that evidence. (CALJIC Nos. 1.01,

4   2.00, 2.02; 1 CT 96, 99, 100.)

5        Considering the instructions in their entirety, there is no reasonable likelihood they

6   suggested the jury need not find all the elements of robbery and receiving stolen property had been

7   proved beyond a reasonable doubt.

8        Nor was any error prejudicial. See *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Fry*

9   *v. Pliler*, 127 S.Ct. 2321 (2007). Obviously, the jurors were not misled by CALJIC No. 2.15 to

10  convict petitioner irrespective of the evidence. They acquitted him of robbery. (1 CT 199-201.) In

11  addition, petitioner's explanation was wholly unworthy of belief. For example, he acknowledged

12  that he saw Johnson run back to his car clutching a black purse. Petitioner drove Johnson away and

13  watched Johnson pull items out of the purse, including the cell phone and credit card. (3 RT 100-

14  102.) Petitioner asked Johnson if he robbed someone; Johnson said yes. (3 RT 165.) Petitioner

15  acknowledged he picked up the stolen cell phone and credit card from the car floor and put them on

16  the center console. (3 RT 165.) Nevertheless, petitioner claimed that when he used this credit card

17  to pump gas, he thought it was his card. (3 RT 131, 162-163.) Petitioner was unable to rationally

18  explain how he thought a credit card Johnson removed from the stolen purse was his. Petitioner also

19  testified he did not realize what Johnson was pulling from the purse and did not know the cell phone

20  and credit card were in his car until he found them on the car floor when he got home. (3 RT 159,

21  165-166.) This means petitioner drove home before he took the stolen credit card to the gas station

22  to pump gas. (3 RT 165.) But petitioner also denied driving home before going to the gas station

23  to pump gas. (3 RT 166.) Petitioner already knew the stolen credit card was on the console of his

24  car, as he had picked it up from the car floor and put it there. (3 RT 167.) Petitioner's testimony that

25  he used the credit card thinking it was his own lacked any credible foundation. (3 RT 162.)

26  Moreover, the evidence of petitioner's guilt of receiving stolen property was overwhelming. Even

27  without CALJIC No. 2.15, the jury would have found petitioner was in knowing possession of the

28  property stolen from Trinh.

Memorandum of Points and Authorities in Support of Answer - C 07-4904 PJH (PR)

## II.

## THE STATE COURT REASONABLY REJECTED PETITIONER'S CLAIM HE WAS IMPROPERLY IMPEACHED WITH PRIOR CONVICTIONS

According to the Order to Show Cause, petitioner claims the trial court violated due process by allowing him "to be impeached by all of his prior convictions, rather than limiting the number which could be used, and that court's failure to sanitize the conviction for robbery with use of a firearm." OSC at p. 2.

The California Court of Appeal rejected this claim:

In an unreported conference in chambers on December 5, 2005, the trial court heard defendant's *Castro*[4] motion to limit the admission of defendant's prior convictions for impeachment purposes. The court subsequently noted its determinations on the record. The court excluded the use of defendant's 1987 conviction for battery with serious bodily injury, conviction for sodomy, 1991 conviction for receiving stolen property, and 1992 conviction for use of an access card. The court ruled that it would permit defendant to be impeached with his 1986 burglary, 1991 petty theft, 1991 felony forgery, 1992 petty theft, and 1994 robbery. Defendant testified and correspondingly admitted a first degree burglary in 1986, misdemeanor petty theft and felony forgery in 1991, felony theft in 1992, and armed robbery in 1994. Defendant argues that the court abused its discretion in allowing admission of these offenses. We disagree. . . .

The California Constitution authorizes the use of prior felony convictions "without limitation" for purposes of impeachment of any person in a criminal proceeding. (Cal. Const., art. I, § 28, subd. (f).) Such use is limited only by the demands of the Fourteenth Amendment, which requires that convictions used for impeachment be relevant to the credibility of the witness, and by the broad discretion granted to the trial court pursuant to Evidence Code section 352. (*Castro, supra*, 38 Cal.3d at pp. 313-314; *People v. Hinton* (2006) 37 Cal.4th 839, 887-888, quoting *Castro*.)

Defendant does not argue that his prior convictions for theft-related crimes do not reflect on his credibility. "California courts have repeatedly held that prior convictions for burglary, robbery, and other theft-related crimes are probative on the issue of the defendant's credibility." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*), citing cases.) Defendant instead challenges the court's discretionary decision to allow five prior convictions, including an armed robbery. We review the trial court's ruling for abuse of discretion. (See *People v. Green* (1995) 34 Cal.App.4th 165, 182-183 (*Green*).)

We first note that "there is no limitation on the number of prior convictions with which the defendant's credibility can be impeached." (*Mendoza, supra*, 78 Cal.App.4th at p. 927, citing cases.) "'[W]hether or not more than one prior felony should be admitted is simply one of the factors which must be weighed against the danger of prejudice.'" (*Green, supra*, 34 Cal.App.4th at p. 183 [affirming admission of six prior convictions].)

---

[4] *People v. Castro* (1985) 38 Cal.3d 301 (*Castro*).

1    Defendant nevertheless argues that allowing five convictions in this case was
2    "'prosecutorial overkill'" and that because the five admitted priors occurred during a short
     period of time, they are not probative of his credibility as a witness. However, the asserted
3    "short period of time" in fact spanned eight years, and indicates a sustained pattern of
     conduct rather than a temporary indiscretion. California courts have held that the pattern
4    created by the systematic occurrence of felony convictions over a number of years may
     itself be relevant to a witness's credibility. (See *People v. Muldrow* (1988) 202
5    Cal.App.3d 636, 649; see also *Green, supra*, 34 Cal.App.4th at p. 183 [affirming the use
     of six prior auto theft convictions over 16 years for impeachment purposes, reasoning that
6    the defendant's "series of crimes may be more probative than a single crime"].) In this
     case, the combination of the frequency of the convictions and their relevance to dishonesty
7    is highly probative of defendant's credibility. Additionally, the trial court excluded four
     other prior convictions, which indicates its careful consideration of defendant's entire
     record in ruling on the *Castro* motion.
8
9        Defendant argues that the trial court should have omitted the firearm aspect of the
     1994 robbery because its impeachment value is outweighed by its inflammatory effect.
10   We find no abuse of discretion in its admission. First, the armed robbery conviction was
     not identical to the crimes charged, a fact that increases the potential for prejudice and the
11   potential need for "sanitization" of the prior conviction. (See generally *People v. Foreman*
     (1985) 174 Cal.App.3d 175, 180-182.) Second, the reference to the armed robbery was
12   brief and any impact lessened by the explicit instruction regarding the limited use of the
     evidence. (See *People v. Lepolo* (1997) 55 Cal.App.4th 85, 91-92 & fn. 6 [holding that
13   any prejudicial impact of the admission of a prior conviction for brandishing a weapon
     "was kept to a minimum by the manner in which it was introduced to the jurors and by the
14   instruction directing that they may consider such evidence only in assessing [the
     defendant's] credibility"].) Finally, the jury acquitted defendant of the crime most similar
15   to the 1994 armed robbery conviction, second degree robbery, which indicates the lack of
     an inflammatory effect or prejudicial impact.
16       We conclude the court acted within its discretion in allowing the admission of the
     five prior convictions for impeachment purposes.
17
18   Exh. A, pp. 6-9.

19       Petitioner has not demonstrated that the Court of Appeal's rejection of his claim is contrary

20   to, or an unreasonable application of, clearly established United States Supreme Court authority. The

21   admissibility of such evidence is ordinarily a matter of state law. *Estelle v. McGuire*, 502 U.S. at

22   70-71. Only if no permissible inference can be drawn from highly prejudicial evidence is due

23   process violated. *Jammal v. Van De Kamp*, 974 F.2d 1099, 1105 (9th Cir. 1992). Petitioner's

24   assertions fall short of demonstrating a violation of federal due process. On December 5, 2005, the

25   trial court heard motions and stipulations at an unreported conference in chambers (1 RT 3, 5), then

26   stated its rulings on the record. (1 RT 5-7.) With respect to petitioner's motion regarding

27   impeachment with prior convictions, the court ruled that the People would not be permitted to use

28   petitioner's 1987 conviction for battery with serious bodily injury, his 1991 conviction for sodomy

1   in a penal institution, his 1991 conviction for receiving stolen property, and his 1992 conviction for

2   use of an access card. The court ruled the People could impeach petitioner, if he testified, with his

3   1986 conviction for residential burglary, his 1991 conviction for petty theft, his 1991 conviction for

4   felony forgery, his 1992 conviction for petty theft, and his 1994 conviction for robbery. (1 RT 7.)

5   Petitioner testified. (3 RT 121.) On direct examination, petitioner testified he was convicted of first

6   degree burglary in 1986 when he was 18 years old, misdemeanor petty theft and felony forgery in

7   1991, and robbery in 1994, and that his criminal history made him reluctant to contact the authorities

8   in this case. (3 RT 135-136.) On cross-examination, petitioner acknowledged he was convicted of

9   felony residential burglary in 1986, felony theft in 1992, and robbery while personally armed with

10  a firearm in 1994. (3 RT 179.) Although petitioner complains that the court should have limited the

11  number of convictions and should have excluded or sanitized the robbery with personal use of a

12  firearm, it is clear the trial court properly exercised its discretion. It limited the number of prior

13  convictions available for impeachment. The court ruled the People could not use four of the priors

14  (battery with serious bodily injury, sodomy in penal institution, receiving stolen property, unlawful

15  use of access card) and could use five (burglary, petty thefts, forgery, robbery). (1 RT 7.) Petitioner

16  makes no claim burglary, theft, forgery, and robbery lack probative value on the issue of his

17  credibility. Plainly, under California law they do. (*People v. Mendoza*, 78 Cal.App.4th 918, 925

18  (2000) [burglary, robbery, various theft related crimes].) The number of priors allowed was not

19  exceptionally high. The judge disallowed four of nine. There is no automatic limitation on the

20  number of prior convictions with which a defendant's credibility can be impeached. See *People v.*

21  *Mendoza*, 78 Cal.App.4th 918, 927 [ten properly allowed]; *People v. Green*, 34 Cal.App.4th 165,

22  183 (1995) [six]; *People v. Muldrow*, 202 Cal.App.3d 636, 646 (1988) [six]; *People v. Castro*, 186

23  Cal.App.3d 1211, 1216-1217 (1986) [five]; *People v. Dillingham*, 186 Cal.App.3d 688, 694-695

24  (1986) [three]. Petitioner does not specify whether the court should have disallowed one or two

25  additional priors or all of them, or which of the five should have been disallowed. Petitioner has not

26  demonstrated the court violated due process by admitting and excluding the evidence.

27          Petitioner claims "most of the priors occurred within a short period of time and so were

28  not probative of a persistent disposition to no evil." (AOB 20.) As the state court found, the prior

1  convictions spanned eight years and demonstrated "a sustained pattern of conduct rather than a

2  temporary indiscretion." Plainly, this criminal history of multiple convictions reveals petitioner's

3  character for dishonesty. Impeachment of petitioner with only one or two priors would have given

4  him a "false aura of veracity."

5       Petitioner also claimed in the Court of Appeal that "the impeachment value of the gun use

6  in the 1994 robbery was greatly outweighed by its inflammatory effect, an effect which would surely

7  tempt the jury to the punish petitioner for being the kind of person who has engaged in armed

8  robbery in the past . . . ." Petitioner's hyperbole notwithstanding, the jury acquitted him of the

9  robbery charge. (1 CT 199-201.) Thus, as the state court concluded, the jurors were not misled.

10 Moreover, petitioner's personal possession of a firearm in the commission of robbery has ample

11 bearing on his readiness to do evil, and therefore on his integrity as a witness. In *People v. Lepolo*,

12 55 Cal.App.4th 85 (1997), the court rejected the claim that the trial court abused its discretion in

13 allowing prejudicial evidence of defendant's brandishing a machete during a prior incident involving

14 a confrontation with police officers. The Court of Appeal reasoned that threatening harm with a

15 machete or a gun has more than slight bearing on veracity. (55 Cal.App.4th at 91.) The *Lepolo* court

16 also noted that the potential for prejudice was minimized because the reference was brief and the jury

17 was instructed that it may consider such evidence only in assessing Lepolo's credibility, but that it

18 did "not necessarily destroy or impair his believability." (55 Cal.App.4th at 92; see CALJIC No.

19 2.23.) Likewise here, the reference to petitioner's possession of a firearm in the commission of the

20 robbery was brief and tame. There was no evidence he fired the weapon, injured any one with it, or

21 even waved it around as Lepolo did. (3 RT 179.) Petitioner's jury was instructed, via CALJIC No.

22 2.23, on the limited use of this evidence. (1 CT 108.) And, as noted, the jury acquitted petitioner

23 of the robbery charge. Little prejudice was threatened by admission of the evidence and none

24 occurred.

25       In any event, there was no prejudice under *Brecht*. The trial court reasonably exercised

26 its discretion and permitted use of five priors and disallowed use of four. The jury was not

27 misled—it acquitted petitioner of the charged robbery. It is undisputed petitioner was in possession

28 of very recently stolen property, that he knowingly drove Johnson and the loot from the scene of the

1 | robbery, and that he used the victim's access card to pump gas. His claim that he pumped gas
2 | thinking that this was his credit card was inherently unbelievable.

3

4 | **CONCLUSION**

5 | For the foregoing reasons, the petition for a writ of habeas corpus should be denied.

6 | Dated: May 27, 2008

7 | Respectfully submitted,

8 | EDMUND G. BROWN JR.
   | Attorney General of the State of California

9 | DANE R. GILLETTE
10 | Chief Assistant Attorney General

11 | GERALD A. ENGLER
   | Senior Assistant Attorney General

12 | PEGGY S. RUFFRA
   | Supervising Deputy Attorney General

13

14 | /s/ Stan Helfman
   | STAN HELFMAN
15 | Supervising Deputy Attorney General

   | Attorneys for Respondent

16

17 | 40257025.wpd
   | SF2007402695

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Answer - C 07-4904 PJH (PR)