UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY LEE TOWNSEND,

    Petitioner,

vs.

DERRAL G. ADAMS, Warden,

    Respondent.

No. C 07-4904 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. For the reasons set out below, the petition is denied.

## BACKGROUND

Petitioner was convicted by a jury of receiving stolen property and using a stolen access card. He was sentenced to prison for twenty-five years to life. He does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

> On September 12, 2004, at approximately 9:30 p.m., a man snatched Trinh Tuyet Trinh's purse as she parked her car in front of her home. The purse contained a wallet, checkbook, credit card and cell phone. Trinh followed the man onto the street and saw him get into a white truck driven by another person. She flagged down a car and told the occupants, Gabriel Medina and Randall Kennedy, that someone had stolen her purse. She pointed to a white Explorer that was driving away, and Medina and Kennedy followed.
>
> The Explorer, exceeding the speed limit, drove through two red lights on surface streets before entering the freeway. Medina and Kennedy lost the Explorer after it crossed several lanes to make a sudden exit. They returned to where they had left Trinh and gave the Explorer's license plate number to the police. A tow hitch on the Explorer obscured the view of the license plate,

causing Kennedy and Medina to misidentify one character, but the police eventually focused on an Explorer registered to defendant. They located the vehicle in San Jose in the very early hours of the morning. The hood of the Explorer was warm, indicating it had been driven recently. Looking into the vehicle, Officer Edward Perea observed a credit card with Trinh's name and a couple of cell phones in the center console.

The officers knocked on defendant's door and arrested defendant, telling him it was in connection with an earlier incident involving his vehicle. When defendant first saw the officers, he burst into tears. He said he did not know that the guy was going to do what he did and offered to show the officers where that person lived. Defendant identified the place were he said he had dropped off his passenger. Officer Perea knocked on doors in the neighborhood and eventually located Tavita Wooden, who matched a description Trinh had given him of the man who had taken her purse. Officer Perea was unable to arrest Wooden at that point.

After being read his rights, defendant agreed to talk and told officer Perea that Anthony Johnson, a friend, had asked him for a ride to the Motel 6. When shown a photograph of Wooden, defendant identified him as Anthony Johnson. After they were on their way, defendant said Wooden told him to stop in another location and Wooden got out of the vehicle. When Wooden came back to the Explorer, he told defendant to hurry away and defendant complied. Defendant said he did not know he was being followed but that he was scared. He told Officer Perea that Wooden was clutching a black purse when he returned to the car and started going through it as they drove away. Wooden pulled out various items, including a cell phone and credit card. Defendant admitted that the cell phone and credit card Officer Perea had seen in the Explorer came from the purse. He also admitted that he had used the credit card to purchase gasoline at a Unocal 76 station.

Defendant testified on his own behalf at trial and further explained that Wooden was an acquaintance who had asked defendant for a ride home. On the way to Wooden's house, Wooden asked defendant to stop in the general area of the Motel 6, where Wooden needed to make a "quick run." Wooden left the car and defendant waited for about 20 or 25 minutes for Wooden to return. Defendant did not know Wooden was going to commit a robbery.

Wooden returned to the vehicle and told defendant to "go, go, go." Wooden seemed jittery and anxious and was clutching an object that defendant later saw was a purse. He asked Wooden what had happened, but Wooden just told him to go and get out of there. Defendant was scared and thought Wooden had done "something wrong." Defendant had been to prison before and wanted to get away quickly for fear of being incarcerated again. He started the truck and left. When defendant saw Wooden rifling through the purse, he believed that Wooden had done "something" and gotten defendant involved in it. At one point, defendant asked Wooden, "what did you do, you just robbed somebody[,]" and Wooden confirmed his suspicion.

Wooden left some of the items that he had taken in defendant's car. Defendant purchased gasoline with Trinh's credit card about two or three hours after dropping off Wooden. As defendant was pumping the gas, he stopped because he realized he was doing something wrong. He later said that he took the card from the center console to buy gas, mistaking it for his,

2

1   and stopped pumping gas when he realized it was not his card.[1]  At home,
2   defendant told his wife what had happened and they discussed what he
    should do next.  About a half hour later, the police knocked at the door.  He
3   did not call the police because he was afraid that as a convicted felon he
    would be implicated in the crime, but he tried to be helpful by leading them to
4   Wooden.  Defendant initially pleaded no contest to count one [robbery] and
    guilty to counts two [receiving stolen goods] and three [use of a stolen access
5   card], but the People stipulated to a withdrawal of his plea prior to sentencing.
    The court accepted the stipulation and the case was tried to a jury, which
6   acquitted defendant of robbery but found him guilty of receiving stolen
    property and using a stolen access card.

Ex. A at 2-4.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but

---

[1] [Renumbered from court's opinion].  He also testified, however, that he picked up the credit card and cell phone from the floor and put them in the center console when he got home, but that he did not go home before going to get gas.

3

"unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

As grounds for habeas relief petitioner asserts that: (1) the trial court's use of California Jury Instruction, Criminal (CALJIC) 2.15, which allows an inference of guilt from possession of stolen property and only slight corroborating evidence, violated his due process rights; and (2) his due process rights were violated when the trial court allowed the People to impeach him with five of his nine prior convictions.

**I.  Jury Instruction**

Petitioner contends that the trial court's use of CALJIC 2.15 violated his due process rights by relieving the prosecution of the burden of proving each element of the charged crimes beyond a reasonable doubt. This claim is without merit.

To obtain federal collateral relief for erroneous jury instruction, a petitioner must show that the ailing instruction so infected the trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). In analyzing whether an instruction that creates an evidentiary inference violates due process by relieving the state of its burden of proving each element of a crime beyond a reasonable doubt, the first step is

4

determining whether the instruction creates a mandatory presumption or a permissive inference. *See United States v. Warren*, 25 F.3d 890, 897 (9th Cir.1994). An instruction that creates a mandatory presumption violates due process by foreclosing independent jury consideration of whether the proven facts establish particular elements of the charged offense and relieving the State of its burden of proving by evidence each element of the crime beyond a reasonable doubt. *Carella v. California*, 491 U.S. 263, 265-66 (1989) (citations omitted). In contrast, a permissive inference "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Francis v. Franklin*, 471 U.S. 307, 314–15 (1985). Accordingly, a permissive inference "violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.*

If the instruction violated the petitioner's right to due process, he can obtain habeas relief only if the instruction resulted in actual prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Actual prejudice exists if the unconstitutional instruction had a "substantial influence on the conviction." *Id.*

As given at petitioner's trial, CALJIC 2.15 states, in part:

> If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crimes charged in counts 1 [robbery] and 2 [receiving stolen goods]. [¶] Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. [¶] However, this corroborating evidence need only be slight and need not by itself be sufficient to warrant an inference of guilt. [¶] Please, remember that to convict the defendant of the crimes charged, you must be satisfied beyond a reasonable doubt.

Ex. A at 4-5 n.3. This instruction creates a permissive inference allowing, but not requiring, the jury to infer guilt from conscious possession of recently stolen goods along with slight corroborating evidence. The instruction also includes an explicit reminder of the reasonable doubt standard.

///

In rejecting petitioner's argument that this instruction violated his due process rights,

the California Court of Appeal reasonably applied a standard that is fully consistent with clearly established federal law. The court held that reason and common sense justify the conclusion that evidence of defendant's possession of Trinh's recently stolen property, along with the strong corroborating evidence that petitioner knew that the property was stolen, tends to prove that he is guilty of receiving stolen property. Ex. A at 5. As the court pointed out,

> Defendant testified that he saw Wooden return with the purse and take items out of it, including the cell phone and card. When defendant asked Wooden if he had robbed someone, Wooden said yes. Defendant found the card and cell phone in the car after dropping off Wooden and moved the items to the center console of the car. Finally, defendant used the credit card knowing (or, at least, belatedly realizing) that it was not his.

Ex. A at 5-6. Petitioner knew that Wooden had robbed someone, and he knew that the cell phone and credit card were taken from the stolen purse. He also kept the stolen phone and credit card in his car after dropping off Wooden, and then he used the stolen credit card. The trial judge instructed the jury on the essential elements of receiving stolen property. Ex. E, vol. 1 at 126. Under those instructions, the facts above were such that reason and common sense justified an inference that petitioner was guilty of receiving stolen property.

The Court of Appeal correctly identified the controlling federal law, and its conclusion that giving CALJIC 2.15 did not violate due process was, for the reasons set out above, not an unreasonable application of clearly-established United States Supreme Court authority. Petitioner is not entitled to habeas relief on this claim.

**II.     Impeachment by Prior Convictions**

Petitioner contends that the trial court violated his due process rights by allowing impeachment by five of his nine prior convictions, including one conviction for robbery with the use of a firearm. This claim is without merit.

A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law by infringing upon a federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed

6

by due process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Accordingly, a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).

A prerequisite for finding that admission of evidence violated due process is that there have been no permissible inferences the jury could have drawn from the evidence. *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993)*; Jammal*, 926 F.2d at 920. This is because when evidence could give rise to more than one inference, "some permissible, some not, we must rely on the jury to sort them out in light of the court's instructions." *Jammal*, 926 F.2d at 920. Evidence of prior crimes may properly be used to draw inferences about a witness' credibility. *See, e.g., Old Chief v. United States*, 519 U.S. 172, 176 n.2 (1997) ("prior-offense evidence may in a proper case be admissible for impeachment, even if for no other purpose"); *McGautha v. California*, 402 U.S. 183, 215 (1971) ("a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like"). Accordingly, there was a permissible inference the jury could draw from the evidence and, under *Jamal* and *McKinney*, there could have been no due process violation.

Alternatively, the admission of petitioner's prior convictions was neither arbitrary nor fundamentally unfair. The trial court heard petitioner's motion to limit the admission of prior convictions for impeachment purposes, and ruled that the People could not use petitioner's 1987 conviction for battery with serious bodily injury, his 1991 conviction for sodomy in a penal institution, his 1991 conviction for receiving stolen property, and his 1992 conviction for use of an access card. Ex. D, vol. 1 at 7. The court ruled that the People could impeach petitioner, if he testified, with his 1986 conviction for residential burglary, his 1991 conviction for petty theft, his 1991 conviction for felony forgery, his 1992 conviction for petty theft, and his 1994 conviction for robbery. That the court distinguished among the prior offenses is in itself an indication that the ruling was not arbitrary. Furthermore, as the Court

7

of Appeal noted, repeated felony convictions over a number of years may be relevant to a witness' credibility, and in this case "the combination of the frequency of the convictions and their relevance to dishonesty is highly probative of defendant's credibility." Ex. A at 8.

By providing a non-arbitrary reason for allowing the impeachment, the Court of Appeal acted in a manner consistent with federal law. Furthermore, the court's reasoning — that the evidence could be probative of petitioner's credibility — is itself consistent with federal law. Defendants are not immune from impeachment: there is a "longstanding rule that where a defendant takes the stand, his credibility may be impeached and his testimony assailed like that of any witness." *Portuondo v. Agard*, 529 U.S. 61, 69 (2000).

The admission of this evidence was also not fundamentally unfair. The evidence was introduced in petitioner's testimony, and the jury was instructed to use it only to draw inferences regarding the trustworthiness of that testimony. 1 Ex. E at 108. This use of prior crimes evidence is clearly consistent with federal law. *See, e.g.*, *Old Chief*, 519 U.S. at 176 n.2; *McGautha*, 402 U.S. at 215.

Because admitting the evidence of petitioner's prior convictions was neither arbitrary nor fundamentally unfair, and there was a permissible inference the jury could make from the evidence, allowing petitioner to be impeached by some of his prior convictions was not contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 29, 2009.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.07\TOWNSEND4904.RUL.wpd